b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| LISA KAY SANDERS, Appellant | CIVIL DOCKET NO. 2:20-CV-00595 |
| VERSUS | DISTRICT JUDGE CAIN |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, Appellee | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Lisa Kay Sanders ("Sanders") appeals the termination of her supplemental security income benefits ("SSI") and the disqualification of her trust as a special needs trust. Because the "Lisa Kay Sanders Special Needs Trust" (the "Trust") fails to meet the federal criteria for an excludable resource, the decision of the Commissioner should be AFFIRMED.

I. Background

Sanders received SSI for several years due to Down Syndrome and Tourette Syndrome.[1] After Sanders's mother died intestate in May 2017 (her father having predeceased her mother), the Social Security Administration ("SSA") terminated Sanders's SSI on July 1, 2017. ECF No. 14-1 at 51, 59, 71, 74. The SSA reasoned that because, on June 1, 2017, Sanders owned a checking account with $1,000 and

---

[1] Sanders had been receiving $735/month.

real estate valued at $15,520,[2] she had countable resources worth more than $2,000.00.  ECF No. 14-1 at 59, 70.

Sanders's requested reconsideration, contending she had not yet actually acquired any property by inheritance and, when she did, it would be put into a special needs trust.  ECF No. 14-1 at 71.  The SSA denied Sanders's request for reinstatement of her SSI on reconsideration.  ECF No. 14-1 at 74.

A *de novo* hearing was held before an administrative law judge ("ALJ") in May 2019, at which Sanders appeared with her attorney.  ECF No. 14-1 at 25.  The ALJ unsuccessfully attempted to question Sanders about her inheritance.  ECF No. 14-1 at 30.  Sanders's attorney explained that Sanders did not understand the questions.  ECF No. 14-1 at 31.  He further explained that the succession was still under administration and had not yet been distributed to Sanders and her siblings.  ECF No. 14-1 at 31.  Sanders's brother, Jeff Sanders, was the independent administrator of the succession.  ECF No. 14-1 at 30, 48.

The ALJ asked Sanders's attorney why Sanders's bank records showed she had $1,000 cash and real estate valued at $15,520.  ECF No. 14-1 at 31-32.  Sanders's attorney explained the real property was in Sanders's mother's succession.  ECF No. 14-1 at 31-32.  The Trust was established on April 15, 2019 to receive whatever property Sanders inherited.  ECF No. 14-1 at 19, 32, 107.  Sanders

---

[2] Sanders's mother's estate was not settled and there was no judgment of possession until 2019.  ECF No. 14-1 at 71.

2

is the beneficiary of the Trust and her sister, Jeanne Sanders LaFleur is the trustee. ECF No. 14-1 at 11. A donation to the Trust was executed to donate whatever Sanders acquired from the succession, when it was finally distributed. ECF No. 14-1 at 32, 107. Sanders eventually received a 1/5 interest in her mother's real property that was valued at $15,520.

The ALJ then stated the only issue was whether the Trust complied with the law and regulations for a special needs trust, and therefore further testimony was unnecessary. ECF No. 14-1 at 33. The ALJ found that Sanders's Trust did not meet the federal criteria for a special needs trust, so her 1/5 interest in the inherited property was not an "excludable resource." ECF No. 14-1 at 21. Therefore, Sanders had "countable resources" of $16,520. ECF NO. 14-1 at 22. Because Sanders was $14,520 over the individual resource limit of $2,000, the termination of her SSI benefits was upheld on July 29, 2019.

Sanders requested a review of the ALJ's decision, but the Appeals Council declined to review it. ECF No. 14-1 at 4. The ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Sanders next filed this appeal for judicial review of the Commissioner's final decision. Sanders contends on appeal that the ALJ committed legal error in finding her inheritance was not an excludable resource because it went into her Special Needs Trust, and therefore it does not disqualify Sanders from continuing to receive

SSI benefits. ECF Nos. 16, 18. The Commissioner responded to Sanders's appeal. ECF No. 17.

## II. Law and Analysis

### A. Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642

F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

A court does have authority, however, to set aside factual findings that are not supported by substantial evidence, and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

### B. <u>Sanders's Trust does not qualify as a special needs trust that is excluded from a claimant's resource valuation under SSI.</u>

The parties do not raise any issues as to whether the Trust is a trust,[3] or whether Lisa Sanders is disabled. The only issue is whether the Trust meets the federal criteria set forth in 42 U.S.C. § 1396p(d)(4)(A) for a "special needs trust," for purposes of resource-counting for SSI.

Sanders contends, and provided documentary evidence to the SSA to show, that the Trust has its own EIN number and its own bank account and has been judicially confirmed and ratified. Sanders further contends and shows that she transferred her interest in her mother's succession to the Trust. ECF No. 16.

---

[3] As used in the Louisiana Trust Code, LSA–R.S. 9:1721, *et seq.*, "except when the context clearly indicates otherwise," a "[t]rust instrument" means "the written document creating the trust and all amendments and modifications thereof." *See* La. R.S. 9:1725(8); *see also Green v. Regions Bank*, 2013-0771 (La. App. 1 Cir. 3/19/14), 2014 WL 3555820, at *1 n. 2.

Sanders argues that her Trust is exempt because it is irrevocable. "As a general rule, a revocable trust is a resource for purposes of Medicaid eligibility and an irrevocable trust is not a resource for that purpose." *Smith v. State Department of Health & Hospitals,* 39,368 (La. App. 2d Cir. 3/2/05), 895 So.2d 735, 740, *writ den.,* 2005-1103 (La. 6/17/05), 904 So.2d 701. However, as discussed below, her Trust must meet the other requirements, as well, to not be counted as a resource.

The Commissioner contends that, under 42 U.S.C. § 1396p(d)(4)(A), a special needs trust must meet three criteria for the assets in the trust to not be considered resources for SSI purposes:

1. The trust must contain the assets of a disabled individual under the age of 65;

2. The trust must be established for the sole benefit of such individual through the actions of the individual, a parent, grandparent, legal guardian, or court; and

3. The trust must provide that the state (or states) will receive all amounts in the trust upon the death of the individual, up to an amount equal to the total medical assistance paid on behalf of the individual under a state Medicaid plan.

The Commissioner contends Sanders's Trust does not meet the second and third criteria.

### 1. The Trust fails to name Sanders as the sole beneficiary.

The Commissioner contends, and the ALJ found, the Trust is not for the sole benefit of Sanders because it provides that, if the existence of the Trust has the effect of rendering Sanders ineligible for SSI benefits, the Trustee may terminate

the Trust and distribute the remaining property in the Trust to the other principal beneficiaries.

The ALJ stated in his decision (ECF No. 14-1 at 22):

A computerized document from SSA indicates that the claimant has inherited real property co-owned with siblings. It is not used for self-support and not used to produce income. However, her representative argued that the property had been placed in an irrevocable trust. An Act of Trust was established for the claimant on April 15, 2018. Her sister, Jeanne Sanders Lafleur, was appointed trustee. The purpose of the trust is stated to be to provide a supplement and emergency funds to the claimant's public benefits. The trust states that, if it were invaded by creditors [or] it causes public benefits to be terminated, it would likely be depleted prior to the claimant's death. The trust states that it is irrevocable.

However, this trust does not meet the requirements for a Special Needs Trust. Article 2.4 allows for early termination. Article 3.3 of the trust violates the early termination provision. Article 3.4 of the trust violates the State Medicaid reimbursement requirement. Therefore, this trust is a countable resource.

Sanders is named as the income beneficiary of the Trust, while her siblings are the principal beneficiaries. ECF No. 14-1 at 109, ¶¶ 2.1, 2.2. If the Trust is terminated by Sanders's death or by the trustee (because the Trust precludes Sanders from receiving state or federal benefits), the remaining property is distributed to the principal beneficiaries. ECF No. 14-1 at 9-10, ¶¶ 2.4, 3.3, 3.4; at 111, ¶ 3.4.

The Social Security Program Operations Manual System ("POMS")[4] SI 01120.203(B)(6) provides that trust provisions that allow for termination of the trust prior to the individual's death[5] and payment of the corpus to another individual or entity (other than the State or another creditor) will result in disqualification from the special needs trust exception. Because Sanders's Trust contains an early termination provision, along with payment of the Trust corpus to Sanders's siblings, Sanders is not the sole beneficiary of the Trust. Therefore, the Trust fails to meet that criteria for a special needs trust. *Compare Stahl v. Commissioner of Social Security*, 2015 WL 5245331, at \*5 (S.D. Ohio 2015), *report and recommendation adopted,* 2015 WL 5840277 (S.D. Ohio 2015) (since contingent interests are created by providing for the trust corpus to be paid to a beneficiary other than the beneficiary-claimant, the trust was not established for the sole benefit of the beneficiary).

Sanders contends the ALJ failed to give proper weight to the provision of the Trust that renders null and void any provision of the Trust that has the effect of disqualifying Sanders from receiving government benefits. Sanders contends the

---

[4] The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits, available at https://secure.ssa.gov/apps10/poms.nsf/chapterlist!openview&restricttocategory=05.

[5] An "early termination provision" allows a trust to terminate before the death of the beneficiary, such as a provision for termination of the trust when the beneficiary becomes ineligible for SSI and Medicaid. *See* POMS SI 01120.199(C).

8

early termination provision in the Trust was rendered null because it disqualified her from receiving SSI.

While the ALJ arguably failed to take into account the Trust document as a whole and give effect to all of its provisions, a decision as to the effect of the severability provision in the Trust is not required. The Trust is disqualified as a special needs trust for the reason set forth below.

### 2. The Trust fails to name the State as the first payee upon Sanders's death.

The Commissioner contends, and the ALJ found, the Trust failed to provide that the State would receive all amounts remaining in the Trust upon the death of Sanders, up to an amount equal to the total medical assistance pain on behalf of Sanders.

On realizing such a provision had not been made, Sanders's Trust was amended (ECF No. 14-1 at 10, ¶ 3.4 ) to provide:

> At the termination of the trust upon the death of the beneficiary, any and all remaining principal of the trust shall be distributed to the principal beneficiaries in accordance with their respective interests in the trust in accordance with the provision of this trust and applicable law. Nothing contained in this section shall prevent, or restrict the right of the State of Louisiana from receiving any Medicaid reimbursement to which it may be entitled.

"The Omnibus Budget Reconciliation Act of 1993, U.S. PL 103–66, 107 Stat. 312 (OBRA '93), U.S. PL 103–66, 107 Stat. 312, enacted August 10, 1993, established a general rule that trusts would be counted as assets for the purpose of

9

determining Medicaid eligibility, but it excepted from that rule special needs trusts for severely disabled persons under age 65; the special needs trusts were required to include a payback provision to obtain or preserve Medicaid eligibility. *See* 42 U.S.C. § 1396p(d)(4)(A)." *In re Calley,* 2017-0068 (La. App. 1st Cir. 9/21/17), 232 So. 3d 68, 73, *writ den.,* 2017-1781 (La. 12/15/17), 231 So. 3d 643.

"The special needs trust statute specifically addresses the unique and difficult situation faced by severely disabled individuals with assets that are sufficient to end their Medicaid eligibility but insufficient to account for their medical costs." *Matter of Calley*, 232 So.3d at 74. "Through the trust, the disabled person is able to qualify for Medicaid benefits, but upon his or her death, the life-enhancing purpose of the special needs trust can no longer be effectuated and the State is entitled to reimbursement of funds to sustain the Medicaid system." *Matter of Calley*, 232 So.3d at 74; *see also Arnold v. National Casualty Co.,* 2015 WL 3971224, at *13–14 (W.D. La. 2015), *aff'd sub nom, Newsome v. National Casualty Co.*, 659 Fed. Appx. 756 (5th Cir. 2016).

Sanders argues that the amendment to the Trust, taken together with the intent expressed in § 1.2 of the Trust,[6] satisfies the requirement that the Trust

---

[6] Section 1.2 of the Trust states: "Trust Purpose and Intent. This trust is specifically designed to supplement and no [sic] supplant the benefits of any public assistance programs to which the beneficiary is or will be entitled. These programs include, but are not limited to, Supplemental Social Security (SSI), Medicaid and Medicare, Federal Social Security Disability Income ("SSDI"), vocational rehabilitation, subsidized housing benefits, or any other programs funded by the local parish, state, or federal governments which offer rehabilitative or other services. Accordingly, notwithstanding any provision herein to the

provide for reimbursement to the State for Medicaid expenditures. However, both POMS and the Louisiana Medicaid Eligibility Manual ("LaMEM")[7] provide that more specific language must be used.

POMS SI 01120.203(B)(10), (C)(4) provides: "To qualify for the special needs trust exception, the trust must contain specific language that provides that, upon the death of the individual, the State(s) will receive all amounts remaining in the trust, up to an amount equal to the total amount of medical assistance paid on behalf of the individual under the State Medicaid plan(s). The State(s) must be listed as the first payee(s) and have priority over payment of other debts and administrative expenses, except as listed in SI 01120.203E in this section."

LaMEM § I-1040(e) states:

e. State Medicaid reimbursement requirement;

To qualify for the special needs trust exception, the trust must contain specific language that provides that upon the death of the individual, the State of Louisiana shall receive all amounts remaining in the trust, up to an amount equal to the total amount of medical assistance paid on behalf of the individual under the State Medicaid plan(s). . . .

Note:
Labeling the trust as a Medicaid pay-back trust, OBRA 93 pay-back trust, trust established in accordance with 42 U.S.C. § 1396p, or as an

---

contrary, this trust shall be construed and interpreted consistent with the intent and purpose of this trust qualifying as a 'Special Needs Trust' under the provisions of any applicable federal and state laws and such that not distribution or payment of income or principal of this trust shall be made to the beneficiary if such distribution or payment would disqualify or make the beneficiary ineligible for the programs described in this trust." ECF No. 1411 at 108, ¶ 1.2.

[7] The LaMEM is available at https://ldh.la.gov/page/1681.

> MQT, etc. is not sufficient to meet the requirements for this exception. The trust must contain language substantially similar to the language above. . . .

Sanders cites *Matter of Calley*, 232 So.3d at 70, in which the Court found a special needs trust with an amendment to provide for payment to the state satisfied the requirement that the Trust provide that the State be the first payee:

> A special charge against the Trust funds exists with respect to any claim by the State of Louisiana and/or the United States of America for recovery of any sums paid under Title XIX of the Social Security Act for medical services rendered to Brian L. Calley. In the event any such claim should be made, and payment thereof is approved by the court having jurisdiction, said claims shall be satisfied out of existing Trust funds.

The *Calley* trust amendment gives priority to reimbursing the State for Medicaid and goes further than the amendment in this case, which does nothing more than recognize the State's right to claim reimbursement.

Because the Amendment to the Trust fails to name the State as the first payee for reimbursement of the amounts expended on Sanders for Medicaid, the Commissioner did not err in finding the Trust does not qualify as a special needs trust.

12

### 3. The corpus and income of Sanders's irrevocable trust are both countable resources.

Sanders also argues that the Trust is irrevocable.[8] When an irrevocable trust does not qualify as a special needs trust under § 1396p(d), the provisions of § 1396p(d) apply to determine what parts of the Trust constitute a countable resource.[9]

Property held in trust may or may not be considered a resource for purposes of Medicaid eligibility. *See Smith v. State Department of Health & Hospitals*, 39,368 (La. App. 2 Cir. 3/2/05, 6–7), 895 So.2d 735, 740, *writ den.*, 2005-1103 (La. 6/17/05) 904 So.2d 701 (*citing* LaMEM § 1634.39). The treatment of trust amounts for purposes of determination of an individual's eligibility for Medicaid under a State plan is governed by the Social Security Act under 42 U.S.C. 1396p(d). *See Smith,* 895 So.2d at 740. Trusts created after August 11, 1993 must be evaluated under the rules established by the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93"). *See Smith,* 895 So.2d at 740 (*citing* LaMEM § 1634.39). The rules applicable to trusts established after August 11, 1993 are found in § I-1730 of the Manual. *See Smith,* 895 So.2d at 740 (*citing* LaMEM § 1634.39). § I-1740 sets

---

[8] The Government contends, incorrectly, that the irrevocability of the Trust is irrelevant. The ALJ did not distinguish between the income and the corpus of Sanders's irrevocable Trust in his decision.

[9] The provisions of § 1396p(d) do not apply if a trust qualifies as a special needs trust. 42 U.S.C. § 1396p(d)(4).

13

forth the exceptions to counting as resources trusts established after August 11, 1993 (i.e. special needs trusts).

Section 1396p(d)(1) states: "For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual."[10]

Because the Trust is irrevocable (ECF No. 14-1 at 109, ¶ 1.4) and is not an excludable special needs trust, § 1396p(d)(3)(B) applies to determine what portion of the trust is a countable resource for Sanders:

> (B) In the case of an irrevocable trust--
>
> (i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income--
>> (I) to or for the benefit of the individual, shall be considered income of the individual, and
>> (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and
>
> (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c), and the value of the trust shall be determined for

---

[10] Section 1496p(d)(6) states: "The term 'trust' includes any legal instrument or device that is similar to a trust . . . ." It is not disputed that the Trust is a trust pursuant to § 1496p(d)(2).

purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

The Trust names Sanders as the sole income beneficiary (ECF No. 14-1 at 109, ¶ 2.1) and her siblings as the principal beneficiaries (ECF No. 14-1 at 109, ¶ 2.2). However, § 3.1 of the Trust provides the corpus of the trust may also be distributed to Sanders's behalf, at the discretion of the Trustee:

> The Trustee shall distribute income and if necessary invade the distribute the principal to the trust property (even though such distributions invade, diminish, or completely deplete the trust principal or other trust property) as the Trustee may deem appropriate or necessary to supplement but not supplant the special needs of the income beneficiary consistent with the applicable law regarding a qualified "Special Needs Trust," including such special needs or requisites for maintaining the beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such needs or requisites are not being provided by any public agency, office, or department of the State of Louisiana, any other state, or the United States or Federal Government.

Because the Trust provides that either the Trust income or corpus may be distributed to Sanders, both income and the corpus of the Trust are countable resources for Sanders.

Thus, substantial evidence supports the Commissioner's finding that Sanders's Trust is a countable resource.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Sanders's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __3rd__ day of October 2022.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge